IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERIDA REID, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No. CA 23-1367 |
| | ) | |
| vs. | ) | |
| | ) | |
| McKEESPORT HOUSING AUTHORITY | ) | |
| and TRACY BOSSART, in her official | ) | |
| and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

I.    **PRELIMINARY STATEMENT**

1.  SHERIDA REID brings this action seeking declaratory and injunctive relief against the McKEESPORT HOUSING AUTHORITY (MHA)  and TRACY BOSSART, Coordinator of its Section 8 Housing Choice Voucher Program, for failing and refusing first to afford Ms.Reid a grievance hearing and to render a decision with regard to the merits of Ms. Reid's grievance, before terminating her  Section 8 Housing Choice Voucher Program benefits, in violation of Ms. Reid's due process protections secured by the United States Constitution, the United States Housing Act of 1937, as amended, 42 U.S.C. §1437 *et seq.,* the pertinent federal regulations promulgated by the United States Department of Housing and Urban Development, the MHA's own written policies and the Pennsylvania Local Agency Law.

2.  In contravention of clear legal authority, the MHA has established customs, policies and/or practices of: (1) summarily terminating Section 8 Housing Choice Voucher benefits without first taking reasonable steps to ensure that program

participants receive advance notice of the intended termination and an opportunity to object to the termination at a pre-termination grievance hearing and  (2) refusing and failing to afford participants grievance hearings to object to threatened terminations when, for good cause, participants have requested hearings after the imposed deadlines for doing so.

3.  Ms. Reid, who, for more than four years has been eligible for and has participated in the MHA's Section 8 Housing Choice Voucher Program as a tenant at 3413 Grover Street, McKeesport, PA 15132, was subjected to and grievously harmed by these unlawful and unconstitutional customs, practices and policies.  The MHA knew and/or should have known that Ms. Reid would not receive its advance notice advising Ms. Reid of the imminent termination of her participation in the Section 8 Housing Choice Voucher Program.  The MHA knew and/or should have known that Ms. Reid would not receive its advance notice advising Ms. Reid of her right to request a grievance hearing prior to the deadline for doing so.  Nevertheless, the MHA summarily cancelled Ms. Reid's Section 8 housing subsidy payments to Ms. Reid's landlord for future rent and terminated Ms. Reid's participation in the Section 8 Housing Choice Voucher Program.

4.  Further, the MHA refused and continues to refuse to afford Ms. Reid a late grievance hearing and any opportunity to challenge the legal and factual merits of the MHA's decision to terminate Ms. Reid's participation in the Section 8 Housing Choice Program.

5.  The Defendants' customs, policies and practices of (1) terminating tenants' participation in the Section 8 Housing Choice Voucher Program without first taking

reasonable steps to ensure that those tenants are afforded advance notice of the threatened action and the reasons therefor and a pre-termination opportunity to grieve the threatened termination of their Section 8 benefits, and (2) refusing to afford participants grievance hearings to challenge the threatened termination of their Section 8 benefits when the participants, for good cause, request grievance hearings after the deadline for doing so, illegally and unconstitutionally deprived Ms. Reid of her Due Process rights to notice and hearing guaranteed by the Fourteenth Amendment to the United States Constitution, United States' Housing Act and its regulations, the MHA's own written policies, and the Pennsylvania Local Agency Law..

6.  By this action, Ms. Reid seeks a declaratory judgment that the Defendants' conduct, policy and practices in the foregoing respects violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the United States' Housing Act and its regulations, the ACHA's own written policies, and the Pennsylvania Local Agency Law.

7.  Ms. Reid additionally seeks preliminary and permanent injunctive relief against the Defendants to prevent them from refusing or denying Ms. Reid's reinstatement to and continued participation in the Section 8 Housing Choice Voucher Program without first affording her advance notice of the threatened termination and the reasons therefor, and without first affording Ms. Reid the right to grieve such threatened termination before an impartial adjudicator.

8.  Ms. Reid additionally seeks damages arising from the Defendants' unlawful and unconstitutional conduct.

## II.    <u>JURISDICTION AND VENUE</u>

9.  This Court possesses the jurisdictional authority pursuant to 42 U.S.C. §1983 to redress the rights, privileges and immunities secured by the Constitution and laws of the United States.  This action arises under the Fourteenth Amendment to the Constitution of the United States, the United States Housing Act of 1937, as amended, 42 U.S.C. §1437 *et seq.*, HUD regulations governing the Section 8 Housing Choice Voucher Program at 24 C.F.R. §982,  the Defendants' own written policies set forth in its Section 8 Administrative Plan and the Pennsylvania Local Agency Law, 2 Pa.C.S. §§ 551 et seq.

10.  This Court has original jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1337 and 28 U.S.C. §1343.

11.  Declaratory relief is authorized by 28 U.S.C. §2201 and F.R.Civ.P. 57.

12.  Injunctive relief is authorized by 28 U.S.C. §2202 and F.R.Civ.P. 65.

13.  Venue is proper in the Western District of Pennsylvania under 28 U.S.C. §1391 because it is the Judicial District in which all of the events or omissions giving rise to the Plaintiff's claims occurred and in which the Defendants' principal place of business is located and where it conducts business.

## III.  <u>PARTIES</u>

14.  The Plaintiff, Sherida Reid, is a citizen of the United States and resident of Allegheny County, Pennsylvania.  She is the single mother of three minor children who reside with her.  For more than four years, until April 2023, when the Defendants terminated her benefits, Ms. Reid had been found eligible for and participated in, the

Housing Choice Voucher Program pursuant to Section 8 of the United States Housing Act of 1937, as amended by 42 U.S.C. §1437f.

15.   Defendant McKeesport Housing Authority (MHA) is a public non-profit corporation with its central business office located at 2901 Reidlee Street, McKeesport, PA 15132, MHA is charged with the responsibility, *inter alia*, to operate and manage the federally regulated and subsidized residential tenant Section 8 Housing Choice Voucher program.  The Section 8 program grants to indigent renters and their landlords of privately-owned residential properties monthly rent subsidies to afford these tenants the financial ability to rent decent housing, in accord with the federal Housing Act and the regulations promulgated thereto.   At all times relevant to this action, the MHA acted by and through its duly authorized agents and/or employees who acted within the scope and course of their employment and under color of state law.

16.   Defendant Tracy Bossart is the Coordinator of the MHA Section 8 Housing Choice Voucher Program who, in that capacity, is charged with the responsibility for the operation, administration and  management of the MHA Section 8 Housing Choice Voucher Program in conformity with the pertinent federal and state laws and regulations and MHA's own policies as outlined in its Housing Choice Voucher Program Administrative Plan.

## IV.    LEGAL FRAMEWORK

17.  In 1937, Congress enacted the United States Housing Act "to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families," and to "promote the goal of providing decent and affordable housing for all citizens."  42 U.S.C. §1437(a).

18.  The Section 8 Housing Choice Voucher program, codified at 42 U.S.C. §1437f, was established in 1983 pursuant to §201(a) of the Housing and Community Development Act of 1974, which amended Section 8 of the Act.  The Program, commonly known as "Section 8,"  is one of several federally-funded rent subsidy programs created to aid lower income families who otherwise could not afford to rent decent, safe and sanitary residential housing.

19.   The purpose of the Housing Choice Voucher Program, like all the "Section 8" programs, is to aid "lower income families in obtaining a decent place to live and of promoting economically mixed housing...."42 U.S.C. §1437f(a), by providing monthly rent assistance payments to owners/landlords of privately owned residential rental properties, thereby enabling eligible and participating tenants to lease such privately owned housing.  *See generally* 42 U.S.C. §1437(o).

20.  The federal government, through the United States Department of Housing and Urban Development (HUD), allocates funds to local public housing authorities (PHAs) to administer the Section 8 Housing Choice Voucher Program, by entering into Housing Assistance Payments (HAP) contracts with property owners on behalf of eligible families and agreeing to subsidize the monthly rent payments in amounts based upon the family's incomes.

21.  Once a tenant household has been accepted by the local PHA into the Housing Choice Voucher Program, the PHA may terminate the tenant's participation in the Program only if and as authorized by the Housing Act and the pertinent HUD regulations.  *See*, 24 C.F.R. §§ 982.454 (lack of funding) and 982.552 (participant action or failure to act).

22. Before terminating a tenant's participation in the HCV Program due to an alleged action or failure to act by members of the participant family, a PHA must first provide to the tenant a written advance notice of the intended termination and the reasons therefor, and a pre-termination opportunity for the participant to appear at an informal grievance hearing to object to the proposed termination. 42 U.S.C. §1437d(k); 24 C.F.R. §§982.555(a)(1)(v), 982.555(a)(2), 982.555(c).

23. In addition to its duty to comply with the pertinent federal statutory provisions and regulations, the local PHA must adopt an "administrative plan" which "establishes local policies for administration of the program in accordance with HUD requirements." 42 U.S.C. §1437c-1; 24 C.F.R. §982.54(a).

24. The PHA's administrative plan must "state the PHA procedures for conducting informal hearings for participants." 24 C.F.R. §982.444(e)(1).

25. The MHA's Administrative Plan likewise prescribes, *inter alia*, that the MHA must afford participants in the Section 8 Housing Choice Voucher Program informal grievance hearings in conformity with HUD regulations before the MHA is permitted to terminate those tenants' Section 8 benefits. MHA Administrative Plan, ¶16-III.C, p. 16-16.

26. The MHA's Administrative Plan additionally mandates that any termination notice must contain and include, *inter alia*, "[a] brief statement of the reasons for the decision, *including the regulatory reference,*" "a statement of the family's right to an explanation of the basis for the PHA's decision," "a deadline for the family to request the informal hearing," "a copy of the PHA's hearing procedures," and "That the family may request a remote hearing." MHA Administrative Plan, ¶16-III.C, p. 16-20

27.  Further, the 14th Amendment's Due Process Clause compels the MHA to comply with its own properly promulgated rules, regulations and procedures.  *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Billington v. Underwood*, 613 F.2d 91, 93-95 (5th Cir. 1980) ("Clearly the housing authority must follow its own procedure...Therefore Mr. Billington was certainly entitled to the 'informal hearing' mandated by the applicable federal regulation.").

28.  Additionally, the MHA must comply with the Pennsylvania Local Agency Law, 2 Pa.C.S. §§551 *et seq.*  See, *T & R Painting Co. v. Philadelphia Housing Authority*, 466 Pa. 493, 495 (Pa. 1976) (public housing authority is a local agency within meaning of the Local Agency Law).

29.  The Pennsylvania Local Agency Law provides that "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."  2 Pa.C.S. § 553.

30.  The foregoing procedural provisions of the United States Housing Act, its implementing regulations, MHA's own written policy and the Pennsylvania Local Agency Law codify principles mandated by the due process clause of the Fourteenth Amendment to the United States Constitution, which prohibit state actors from depriving persons such as Ms. Reid of their constitutionally protected property interests in the Section 8 Housing Choice Voucher Program, without meaningful pre-termination notice and an opportunity to object.  *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 262 (1970); *Davis v. Mansfield Metropolitan Housing Authority,* 751 F.2d 180, 185 (6th Cir. 1984).

## V.    STATEMENT OF FACTS

31.   Ms. Reid and her family have participated in the Section 8 Housing Choice Voucher Program administered by the MHA for more than four years.

32.   In February 2019, the MHA entered into a Housing Assistance Payments (HAP) contract to provide Section 8 rent subsidies on behalf of Ms. Reid for her lease of the residential premises at 3413 Grover Street, McKeesport, PA 15132.

33.   On November 1, 2022 the MHA sent Ms. Reid notice of Ms. Reid's obligation to complete and submit the documents required to complete her annual recertification of eligibility for her continued participation in the Section 8 program, and which instructed Ms. Reid to schedule an office appointment for this purpose.

34.   Ms. Reid consequently made an appointment to meet with the MHA during the second week of December 2022.

35.   On November 2, 2022, the MHA sent Ms. Reid a Notice Of Intent To Terminate Housing Assistance Payments, based upon Ms. Reid's alleged involvement in criminal activity.

36.   Ms. Reid timely submitted to the MHA a timely Request For Grievance Hearing to challenge the MHA's November 2, 2022 decision.  To date, and without any explanation or other communication to Ms. Reid, the MHA has failed to schedule a grievance hearing for the purpose of considering Ms. Reid's grievance request.

37.   Unexpectedly, on December 1, 2022, Ms. Reid was suddenly arrested and incarcerated in the Allegheny County Jail.

38. Ms. Reid realized that, not only would be unable to attend her scheduled recertification appointment with the MHA, but that she was unable to contact call the

MHA directly to reschedule, because all inmate calls were collect, requiring the called party to accept charges, which Ms. Reid knew the MHA would not agree to.

39.   Ms. Reid consequently contacted a friend whom she asked to call the MHA on her behalf, to explain Ms. Reid's situation and to request that the scheduled annual recertification meeting be delayed.

40.   The friend promptly called the MHA and notified the MHA representative of Ms. Reid's incarceration and inability to attend the scheduled recertification meeting and asked that it be rescheduled for Ms. Reid.

41.   The MHA responded by advising Ms. Reid's friend that the MHA was not permitted to discuss Ms. Reid's case with her, and that Ms. Reid was required to call the MHA directly.

42.   The friend therefore arranged for a three-way call with herself, Ms. Reid and the MHA for this purpose.

43.    No MHA representative answer this second call, and instead, Ms. Reid left a message on the phone, again explaining that, due to her incarceration, she was unable to attend the recertification meeting, and again requesting that the MHA therefore delay the meeting until Ms. Reid was released from confinement.

44.   Although Ms. Reid, in her telephone message, asked the MHA to contact Ms. Reid's friend in response, Ms. Reid's friend did not hear further from the MHA.

45.   Remaining concerned about her Section 8 recertification, Ms. Reid then requested a caseworker from the Allegheny County jail to contact the MHA on her behalf, to explain Reid's circumstances to the MHA and to ask for a delay of the required recertification meeting until Ms. Reid's release.

46.  On December 8, 2022, the Allegheny County jail caseworker called the MHA, spoke directly with an MHA representative, explained Ms. Reid's situation, and requested the MHA to therefore delay Ms. Reid's recertification meeting.

47.  The MHA representative informed the caseworker that, in light of the situation, the MHA would suspend Ms. Reid's recertification meeting obligation until Ms. Reid was released, or until the outcome of the pending criminal proceedings resulted in Ms. Reid's longterm confinement.

48.  As of December 8, 2022, the MHA knew or should have known that Ms. Reid not only was involuntarily confined and therefore prevented from and unable to timely fulfill her annual recertification obligations, but additionally, that Ms. Reid was unable to and incapable of receiving any mail from the MHA addressed to her residential premises.

49.  Nevertheless, on December 20, 2022, Ms. Bossart sent Ms. Reid a "second and FINAL request," directing Ms. Reid to contact her within five days to schedule a meeting and warning Ms. Reid that if she failed to do so, Ms. Bossart would "assume that [Ms. Reid is] no longer interested and ...will be removed from the program."

50.  Ms. Bossart addressed this letter to Ms. Reid at her residential premises only and not to the Allegheny County jail.

51.  Ms. Reid, still incarcerated on December 20, 2022, did not receive this letter and did not learn about this letter until she was released from jail in late March 2023.

52.  Upon information and/or belief, on February 17, 2023, the MHA either sent or intended to send a second letter to Ms. Reid which warned Ms. Reid that if she did not deliver to the MHA all the "annual briefing forms" within ten days, the MHA would

suspend HAP payments to Ms. Reid's landlord beginning March 1, 2023 and the MHA would terminate Ms. Reid's participation in the Section 8 Housing Choice Voucher Program as of April 1, 2023.

53.  Despite knowing that Ms. Reid had become incarcerated in the Allegheny County Jail, the MHA likewise addressed and sent its February 17, 2023 letter to Ms. Reid at her leased residential premises only.

54.  Despite knowing that Ms. Reid was then incarcerated in the Allegheny County Jail, the MHA did not send a copy of its February 17, 2023 Notice addressed to Ms. Reid at the jail.

55.  Moreover, the MHA's February 17, 2023 Notice lacked and failed to contain any information specifying "[a] brief statement of the reasons for the decision, *including the regulatory reference,*" "a statement of the family's right to an explanation of the basis for the PHA's decision," "a deadline for the family to request the informal hearing," "a copy of the PHA's hearing procedures," and/or "That the family may request a remote hearing."  MHA Administrative Plan, ¶16-III.C, p. 16-20.

56. Upon information and belief, on or before February 27, 2023, the MHA, aware that Ms. Reid remained incarcerated and/or having taken no steps to determine otherwise, placed a "hold" on the implementation of its decision to terminate Ms. Reid's participation in the Section 8 HCV program.

57.  The MHA failed to undertake any measures to attempt to ensure that Ms. Reid was notified of the MHA's threat and decision to terminate her participation in the Section 8 HCV Program or of her right to object to the termination.

58.  Ms. Reid did not receive either the December 20, 2022 or the February 17, 2023 MHA Notices within the time limits imposed by the MHA.

58.  Ms. Reid neither knew of the imminent termination of her Section 8 benefits nor of her need to request a grievance hearing by a specified deadline for the purpose of disputing the validity of the MHA's intended action

60.  It was not until after Ms. Reid's release from confinement in late March 2023 that Ms. Reid retrieved her accumulated mail and discovered the MHA's December 20, 2022 letter.

61.  In April 2023, upon the advice of counsel, Ms. Reid submitted a second request to the MHA in response to its December 20, 2022 letter, seeking a grievance hearing to challenge the termination of her Section 8 benefits on the grounds that she had failed to timely complete the recertification

62.  Despite Ms. Reid's request, the MHA and Ms. Bossart refused and continue to refuse to grant Ms. Reid a grievance hearing,  and refused and continue to refuse to reinstate Ms. Reid's participation in the Section 8 Housing Choice Voucher Program.

63.  The MHA's February 17, 2023 Notice was not included in Ms. Reid's accumulated mail delivered to Ms. Reid's residence during her involuntary confinement.

64.  Ms. Reid never received a copy of the MHA's February 17, 2023 Notice, and she did not know anything about that Notice until the MHA, through undersigned counsel's subsequent discovery, produced a copy to undersigned counsel.

65.   Previously, on or about late January 2023, Ms. Reid, while incarcerated, learned from family members that her landlord had contacted her family, demanding that that the family immediately remove all of Ms. Reid's possessions from her leased

premises and surrender the premises to the landlord, because the MHA had ceased its remittance of the federally subsidized Section 8 rent payments to the landlord.

66.  Unaware of any other options, Ms. Reid's family heeded the landlord's demands and began making arrangements to remove all of Ms. Reid's possessions from the leased premises and have them stored.

67.  Since her release from jail, Ms. Reid, whose income consists of $800.00 bi-weekly from employment as an all-night newspaper deliverer and approximately $300.00 monthlyTANF (food stamps) benefits, has been and remains utterly unable to obtain affordable and suitable housing for her and her three minor children.

68.  Since her release from jail in late March 2023,  Ms. Reid and her three minor children have lacked permanent shelter.

69.  Throughout the past several months, they have found only temporary shelter for only a few days at a time by couch-surfing in the homes of various relatives and acquaintances.

70.  Although Ms. Reid has applied for and is wait-listed for federally subsidized housing at the region's public housing authorities and at privately-owned HUD-subsidized properties, no such housing is presently available nor will it become available for the foreseeable future.

71.  At present, none of the persons who have temporarily shared their limited living spaces with Ms. Reid and her children over the past four months are capable of continuing to do so, and Ms. Reid expects that, imminently, she will be compelled to seek haven for herself and her children, if available, at one of the area's few shelters for homeless families.

72.  Without the Section 8 federal rent subsidies previously provided by the MHA Housing Choice Voucher Program, Ms. Reid cannot afford to pay the amount of rent required to lease rental premises from the private market and simultaneously pay for her and her family's other ordinary living expenses. .

73.  Without the Section 8 federal rent subsidies previously provided by the MHA Housing Choice Voucher Program, Ms. Reid cannot afford to rent suitable safe and habitable residential premises essential to meet her and her children's needs.\

74.  Upon information and belief, it is the custom, policy and/or practice of the Defendants to notify Section 8 Housing Choice Voucher Program participants of their intention to terminate those benefits and of the their rights to object to such termination, by sending such notices by first class postage prepaid mail addressed to the participants at their leased residences, regardless of whether the Defendants know or have reason to know that the participants will not receive those notices because they are not physically present at their residences, and regardless of whether the Defendants know or have reason to know where to send such notices so that the participants will receive them.

75. Upon information and belief, it is the policy and/or practice of the Defendants to refuse to afford late-requested grievance hearings to participants who, due to the Defendants' failure to deliver Section 8 termination notices to program participants at locations where the Defendants know or should know the participants will receive such notices, submit grievance hearing requests after participants receive such notices, following the expiration of the deadlines for doing so.

76.   Upon information and belief, it is the policy and/or practice of the Defendants to issue Notices of Termination Of Housing Choice Voucher Program benefits to families which fail to include the information mandated by the MHA's Administrative Plan.

77.   Ms. Reid has been harmed and continues to suffer harm, including the loss of funds necessary to provide for her necessary household needs in addition to rent, the inability to afford a leased residence sufficiently large to house and  accommodate her three young children, the loss of Ms. Reid's formerly leased premises, the risk and threat of homelessness, and the revocation of Ms. Reid's entitlement to ongoing subsidized rent pursuant to the Housing Choice Voucher Program, due to the Defendants' conduct, policies and practices.

78.   Ms. Reid has no adequate remedy at law.

## VI.  CAUSES OF ACTION

### A.  Unconstitutional Deprivation Of Due Process Protections Guaranteed By the Due Process Clause Of The Fourteenth Amendment To The United States Constitution

79.   Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to program participants without first delivering notice of termination to participants at locations where the Defendants know or should know the participants will receive such notice and rather, by first delivering notice of termination to participants at locations where the Defendants know and/or should know the participants will not receive such notices, have the effect of depriving participants of their vested property interests in their continued receipt of Section 8 Housing Choice Voucher Program federally subsidized rent benefits without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

80.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to Ms. Reid without first delivering notice of termination to her at the Allegheny County Jail, where the Defendants knew and/or should have known she was incarcerated, and the Defendants' delivery of the notice of termination to Ms. Reid at her leased residential premises instead, where the Defendants knew and/or should have known Ms. Reid would not receive it, unconstitutionally violated and continue to violate Ms. Reid's rights to due process secured by the Fourteenth Amendment to the United States Constitution.

81.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to program participants without affording them the right to object to program terminations at late-requested grievance hearings. where the late requests result from the Defendants' failure to deliver termination notices to participants at locations where the Defendants know or should know the participants will receive such notices rather than at locations where the Defendants know or should know the participants will not receive such notices, have the effect of depriving participants of their vested property interests in their continued receipt of Section 8 Housing Choice Voucher Program federally subsidized rent benefits without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

82.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to Ms. Reid without affording Ms. Reid the opportunity to object to such termination at a late-requested grievance hearing, resulting from the Defendants' delivery of the notice at Ms. Reid's leased residential premises, where the Defendants knew and/or should have known Ms. Reid would not receive such notice

because she was then incarcerated at the Allegheny County Jail, unconstitutionally violated and continue to violate Ms. Reid's rights to due process secured by the Fourteenth Amendment to the United States Constitution.

83.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to participants without first providing to them Notices Of Termination which comply with the MHA's  properly promulgated rules, regulations and procedures, have the effect of depriving participants of their vested property interests in their continued receipt of Section 8 Housing Choice Voucher Program federally subsidized rent benefits without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

84.  The Defendants' conduct, policy and practice of terminating Ms. Reid's Section 8 Housing Choice Voucher benefits to Ms. Reid without first providing her a Notice Of Termination which complied with the MHA's  properly promulgated rules, regulations and procedures unconstitutionally violated and continue to violate Ms. Reid's rights to due process secured by the Fourteenth Amendment to the United States Constitution.

**B.  Violation Of The United States Housing Act And The HUD Regulations Implementing The Act**

85.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to program participants by first delivering advance notices of Section 8 termination to participants at locations where the Defendants know or should know the participants will not receive the notices, rather than at locations where the Defendants know or should know the participants will receive such notices,

contravene the rights of the Section 8 participants under the United States Housing Act and the regulations implementing the Act promulgated thereunder.

86.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to program participants without affording participants the opportunity to object to such terminations at a late-requested grievance hearing, resulting from the Defendants' delivery of the termination notices to program participants at locations where the Defendants know or should know the participants will not receive such notices contravene the rights of the Section 8 participants under the United States Housing Act and the regulations implementing the Act promulgated thereunder.

87.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to Ms. Reid (1)  without first delivering notice of termination to her at the Allegheny County Jail, where the Defendants knew she was incarcerated, and the Defendants' delivery of the notice of termination to Ms. Reid at her leased residential premises instead, where the Defendants knew and/or should have known Ms. Reid would not receive it, and (2) without affording Ms. Reid any opportunity to object to such termination at a late-requested grievance hearing, resulting from the Defendants' delivery of the termination notice to Ms. Reid at her leased residential premises, where the Defendants knew and/or should have known Ms. Reid would not receive it, rather than at the Allegheny County Jail, where the Defendants knew or should have known the participants would receive such notice, violated Ms. Reid's rights under the United States Housing Act and the regulations implementing the Act promulgated thereunder.

### C.  Violation Of the Pennsylvania Local Agency Law

88.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to program participants by first delivering advance notices of Section 8 termination to participants at locations where the Defendants know or should know the participants will not receive the notices, rather than at locations where the Defendants know or should know the participants will receive such notices, contravene the rights of the Section 8 participants under the Pennsylvania Local Agency Law.

89.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to program participants without affording participants the opportunity to object to such terminations at a late-requested grievance hearing, resulting from the Defendants' delivery of the termination notices to program participants at locations where the Defendants know or should know the participants will not receive such notices contravene the rights of the Section 8 participants under the Pennsylvania Local Agency Law.

90.  The Defendants' conduct, policy and practice of terminating Section 8 Housing Choice Voucher benefits to Ms. Reid (1)  without first delivering notice of termination to her at the Allegheny County Jail, where the Defendants knew she was incarcerated, and the Defendants' delivery of the notice of termination to Ms. Reid at her leased residential premises instead, where the Defendants knew and/or should have known Ms. Reid would not receive it, and (2) without affording Ms. Reid any opportunity to object to such termination at a late-requested grievance hearing, resulting from the Defendants' delivery of the termination notice to Ms. Reid at her leased residential

premises, where the Defendants knew and/or should have known Ms. Reid would not

receive it, rather than at the Allegheny County Jail, where the Defendants knew or

should have known the participants would receive such notice, violated Ms. Reid's rights

under the Pennsylvania Local Agency Law.

**VII.   RELIEF REQUESTED**

WHEREFORE, the Plaintiff requests this Court to enter relief as follows:

1.  Assume jurisdiction of this case;

2.  Enter a declaratory judgment against the Defendants pursuant to 28 U.S.C. §
2201 and F.R.Civ.P. 47, on the grounds that its conduct, practices, policies and
procedures have unconstitutionally deprive the Plaintiff of her due process protections
as guaranteed by the Fourteenth Amendment to the United States Constitution;

2.  Enter a declaratory judgment against the Defendants pursuant to 28 U.S.C. §
2201 and F.R.Civ.P. 57, on the grounds that its conduct, practices, policies and
procedures have violated the legal rights afforded the Plaintiff pursuant to the United
States Housing Act, the regulations promulgated thereto, and the Defendants' own
Administrative Plan;

3.  Enter a declaratory judgment against the Defendants pursuant to 28 U.S.C. §
2201 and F.R.Civ.P. 57, on the grounds that its conduct, practices, policies and
procedures have violated the legal rights afforded the Plaintiff pursuant to the
Pennsylvania Local Agency Law;

4.  Enter a preliminary and permanent injunction:

a.  Enjoining Defendants from terminating Section 8 Housing Choice

Voucher benefits until and unless advance notices which contain a statement of

the proposed Section 8 termination, a description of the reasons underlying the

proposed termination, the rights of the participants to object to the proposed

termination at an informal grievance hearing and the procedures for requesting

the grievance are delivered by the Defendants to the participants at locations

where the Defendants know and/or should know the participants will receive such

notice;

      b.  Directing Defendants to reinstate the Plaintiff's participation in the

Section 8 Housing Choice Voucher Program retroactive to April 2017;

      c.  Directing Defendants to reimburse the Plaintiff for the subsidized portion

of the rent the MHA has not paid since April 2017;

5.  Award the Plaintiff monetary damages in an amount as authorized by law and

as established at trial;

6.  Award the Plaintiff her litigation costs and reasonable attorneys' fees;

7.  Grant such additional relief as may be deemed fair and proper.

                    Respectfully Submitted:

                    /s/ Eileen D. Yacknin
                    Eileen D. Yacknin
                    Attorney for Plaintiff
                    PaID 26525
                    Neighborhood Legal Services Association
                    928 Penn Avenue
                    Pittsburgh, PA 15222-3799
                    (412) 586-6155
                    yacknine@nlsa.us